THE WESTERN UNION TELEGRAPH COMPANY v. AL-
BERT A. WOODS.

No. 8474.

1. TELEGRAPH COMPANY—*Negligence—Liability*. The failure of
a telegraph company to exercise due diligence in the transmission
and delivery of a telegram presented and paid for by commission
merchants notifying the owner of cattle that recent heavy receipts
had made the market bad, and advising him not to ship his cattle ·
that week, renders the company liable for the direct damages re-
sulting from its negligence.

2. —————— *Message—Delivery—Duty of Company*. The person
to whom the message was addressed had a place of business and
a residence at the place to which it was sent, but was absent
from the town, preparing to ship his cattle, when it was received,
so that personal delivery could not be made by the company.
*Held*, That it was the duty of the company to deliver the mes-
sage either to those in charge of his business house, or to mem-
bers of his family at his residence.

3. —————— *Action for Damages—Competent Evidence*. In an
action for damages, it is competent to show the proximity of the
place of business and residence of plaintiff, that the location of
each was well known to the agent of the company, and that if the
message had been delivered at either of these places with reason-
able diligence it could have been placed in the hands of the plain-
tiff before the cattle were shipped.

4. —————— *Measure of Damages*. Where by reason of the failure
to deliver the message the cattle were shipped upon a glutted and
demoralized market, resulting in loss to the owner, the measure
of damages is the difference between the value of the cattle at the
place of shipment, and what they were sold for on the open market
at the place of destination, together with the necessary cost of
shipment, maintenance, and sale.

5. —————— *Market—Reduction of Loss*. Where the owner was
unable to sell the cattle or obtain an offer for them at the first
market to which they were shipped, it was proper for him, acting
in good faith and in the exercise of reasonably good judgment, to
send the cattle to the next best market, and thus to reduce the in-
jury and loss as far as possible.

*Error from Cowley District Court.*

A SUFFICIENT statement of the facts is contained in
the opinion herein, filed May 9, 1896.

47—56 KAS.

*Rossington, Smith & Dallas*, and *Clifford Histed*, for plaintiff in error.

*S. E. Fink, Grant Stafford*, and *Madden & Buckman*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : Albert A. Woods brought an action against the Western Union Telegraph Company to recover damages alleged to have been sustained through the negligence of the company in failing to deliver a telegraphic message. Woods had been feeding cattle for the market in Cowley county, Kansas, which he had previously purchased through the commission firm of D. L. Jones & Bro., at the Kansas City stock-yards. In the latter part of July, 1890, he decided that 178 head of the steers were about ready for the market, and, meeting a young man who was engaged in business at the stock-yards in Kansas City, he informed him of his purpose to ship the cattle to the market on July 31, 1890. Upon reaching Kansas City the young man notified D. L. Jones & Bro. of the purpose of Woods. At 8 : 55 A. M., July 31, 1890, the commission merchants filed with the Western Union Telegraph Company, at its office at the stock-yards at Kansas City, a telegram, as follows :

"JULY 31, 1890. — *A. A. Woods, Burden, Kan.:* Heavy receipts of cattle and hogs here and above. Market bad. Would advise you not to ship this week.
D. L. JONES & BRO."

The telegram was sent to the main office at Kansas City at 9 : 16 A. M., and was forwarded from there to ·Burden, Kan., at 3 : 32 P. M. of the same day. There were two Western Union wires extending from Kansas City through the Burden office, but there was an

interruption of business on both of the wires on the morning of that day by reason of the breaking of the circuit. The delay on one was about 15 minutes, and about 45 minutes on the other. It appears that several attempts were made to call up the operator at the Burden office between noon and 3 : 32 P. M., but although present in the office he did not answer the calls. After he did receive the dispatch, it was retained in the office, and was not delivered to Woods or to any one for him. Woods left Burden on the 30th and went to Grand Summit, from which point the cattle were to be shipped. He had ordered cars to be set out at that station, and the order was made through the agent at Burden, who was also the agent of the telegraph company. The cattle were loaded on the cars on the evening of July 31, and Woods left the station with his train at 5 : 15 P. M., arriving at Kansas City on the following morning. He committed his cattle to D. L. Jones & Bro., who made diligent but fruitless efforts to sell them, and although the cattle remained in the stock-yards at Kansas City until the evening of August 2, no offer was received for them. There had been unusually heavy receipts, and for that reason there was no demand for the class of cattle which Woods had shipped. It was then determined best to reload the cattle and ship them to Chicago, where they arrived on August 4. There the market was in a demoralized condition, but they were sold on the public market at 2 o'clock in the afternoon of that day for $5,106.92, which, after deducting the expenses, left a net sum of $4,509.92. Proof was offered tending to show that on the day of shipment at Grand Summit the cattle were worth $6,408, and upon the trial the jury found that Woods suffered an

actual loss of $2,014.91, for which the telegraph company was liable.

Complaint is made of rulings upon the admission of testimony, and it is urged that the evidence and findings do not justify the verdict and judgment. The testimony abundantly shows that the telegraph company was negligent in the performance of its duty. There was unnecessary delay and negligence in the transmission of the dispatch from the Kansas City office, and that the agent at Burden was negligent is well established. The terms of the message indicated that it related to an important business transaction which required prompt transmission and delivery. It was held for several hours in Kansas City without even an effort to send it, and finally when it was transmitted to Burden the agent there failed to exercise any diligence in delivering it. He knew that Woods was about to start to the market with his cattle and yet neglected the message which advised him not to do so. Woods was engaged in the mercantile business at Burden, and his store was only a short distance from the office of the telegraph company. It was in charge of his wife and a clerk, and the agent had previously transacted business with them. The dispatch could have been delivered at the store in five minutes after it was received, and could have been delivered at the residence of Woods within seven minutes. If it had been delivered there, sufficient time remained to have taken the message to Grand Summit before the shipment of the cattle was made. It is true the Burden agent states that he attempted to wire the message to Grand Summit, but as the wire was then in use he was unable to do so. It is stated that as the wire belonged to the railroad

company the telegraph company could not use it except when it was free from business of the railway company. However that may be, it is clear that the telegraph company did not exercise diligence in the attempt to deliver the message. It was addressed to Woods at Burden. His residence and place of business were there, and being unable to make a personal delivery at that place, it was the duty of the company to deliver it to his wife or to his clerk at the store or to members of his family at his residence. If delivery had been made at either of these places, the agents of Woods would have had time and opportunity to have sent the message to him at Grand Summit, and thus have averted the loss which followed. (*Given v. W. U. Tel. Co.*, 24 Fed. Rep. 119; *Telegraph Co. v. Trissal*, 98 Ind. 566; Thomp. Electr. § 289; 25 Am. & Eng. Encyc. of Law, 781.) It was, therefore, proper to show the proximity of the place of business and residence of Woods to the telegraph office in Burden, and also that if the message had been delivered at either of these places with reasonable diligence it could have been transmitted to Grand Summit before the cattle were shipped. Although several objections were made, we find that no material errors were committed in the admission of this class of testimony.

Objection is made to the instructions with respect to the measure of damages. The court advised the jury that in case they found that Woods was entitled to recover, the measure of damages would be the difference between the fair market value of the steers at Grand Summit on July 31, 1890, and the value of them in Kansas City, together with the cost of transportation and other necessary expenses; but if the jury were satisfied that after Woods arrived in Kansas City and had offered them for sale in the market

of that place, and after diligent and reasonable effort
to sell them he was unable to sell or obtain an offer
for them, and that thereupon Woods, acting in good
faith and in the exercise of reasonably good judgment,
shipped them to Chicago, and there sold them for a
reasonable and fair price in the usual cattle market
of that city, he would be entitled to recover the dif-
ference between the fair market value of the cattle at
Grand Summit and the market value of the cattle in
Chicago, together with the necessary cost of ship-
ment, maintenance, and sale. We think the correct
measure of damages was applied. The cattle were at
Grand Summit and would have remained there if the
dispatch had been properly delivered. It was shown
that they had a market value at that place. Through
the negligence of the company they were shipped upon
a glutted and demoralized market. At Kansas City
and upon the open market no sale could be made nor
even an offer obtained for them. The duty then de-
volved upon Woods to make the best possible disposi-
tion of them, so as to reduce the loss as far as possible.
They were then taken to Chicago, one of the largest
markets in the country, and were sold there in the
usual and ordinary way. The difference, then, be-
tween the value of the cattle at home and the net re-
ceipts for the cattle on the Chicago market, after
paying the necessary expenses of shipment, care, and
sale, is a fair measure of the loss sustained by Woods,
and involves no remote or speculative elements. In
a somewhat similar case, where a telegraph company
failed to deliver a telegram to a cattle shipper notify-
ing him not to ship cattle to a certain market, it was
ruled that "the measure of damages is the difference
between the value of the cattle at the place of ship-
ment and what they were sold for at the place of des-

tination, together with the cost of freight and their keeping until sold." (*W. U. Tel. Co. v. Linney*, 28 S. W. Rep. 234.)

The question of whether Woods acted in good faith and with reasonable judgment in shipping them to Chicago, and whether he used reasonable care and judgment in obtaining the best possible price for them on that market, was properly submitted to the jury and determined in his favor.

Some criticism was made to a part of an instruction which required the jury to find the difference between the market value of the cattle at Grand Summit and in Chicago on the same day, to wit, July 31, 1890, and it is said that there is no testimony to show what the market value of the cattle was in Chicago on that day. The whole of the charge, taken together, indicated clearly enough to the jury that they were to find the value of the cattle upon their arrival at the Chicago market instead of the day on which they started for that market. It is claimed that no market value in Chicago for cattle like Woods's was shown by the testimony. It is probably impracticable and impossible to show abstractly a fixed market value for cattle of every grade and condition that go into the market. Their value does not depend alone upon their age and breed, but is affected as well by their condition at the time they are offered. These cattle were exposed for sale on one of the largest cattle markets of the world, in the usual and ordinary way, and we think the telegraph company has no reason to complain with respect to the manner of sale or the price at which they were sold.

We find no objection to the charge of the court, nor any error in the remarks made by the court during the course of the trial. The language of the message

was plain; its importance was obvious; the charge for transmission and delivery had been paid; it had been sent for the benefit of Woods, and he is entitled to recover the direct damages resulting to him from the negligent failure of the telegraph company to transmit and deliver it. The finding of negligence is well sustained by the testimony, and the amount awarded by the jury was measured by a just and proper rule.

Judgment affirmed.

All the Justices concurring.